2005-NMCA-100

119 P.3d 181

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Fermin SILAGO, Defendant–Appellee.**

No. 24,854.

Court of Appeals of New Mexico.

June 27, 2005.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellant.

John Bigelow, Chief Public Defender, Santa Fe, NM, Meg Bailey, Assistant Appellate Defender, Albuquerque, NM, for Appellee.

## OPINION

FRY, Judge.

{1} In this case we clarify our case law concerning the relation back of blood alcohol concentration (BAC) levels in DWI cases. *See State v. Christmas,* 2002–NMCA–020, 131 N.M. 591, 40 P.3d 1035; *State v. Martinez,* 2002–NMCA–043, 132 N.M. 101, 45 P.3d 41; *State v. Baldwin,* 2001–NMCA–063, 130 N.M. 705, 30 P.3d 394 (collectively referred to in this opinion as "the BAC nexus cases"). The trial court denied the State's motion in limine seeking admission of expert testimony on retrograde extrapolation, reasoning that our case law does not permit such testimony where the blood or breath sample is taken more than two hours after the time of driving, the BAC is under the statutory limit, and there is no behavior evidence of intoxication. We reverse the trial court's ruling because it reflects a misinterpretation of law and remand for a new hearing on the State's motion in limine.

## BACKGROUND

{2} As a result of an automobile accident, Defendant was charged with homicide by

motor vehicle, three counts of great bodily harm by motor vehicle, and aggravated DWI. At the scene of the accident, which occurred at about 5:45 a.m., Defendant told an investigating officer that he had consumed alcohol, but that he had stopped drinking at midnight. The officer administered two field sobriety tests, which Defendant passed. Before the officer could administer a third test, Defendant complained of pain. Medical personnel transported Defendant to a hospital where an officer sought Defendant's permission to obtain a blood sample. When Defendant refused, officers obtained a search warrant, and hospital personnel finally drew Defendant's blood at 12:05 p.m., six hours and twenty minutes after the accident. Another blood sample was taken at 1:09 p.m.

{3} Prior to trial, the State filed a motion in limine seeking the trial court's advance ruling on the admissibility of certain exhibits and testimony, including expert testimony "[r]egarding blood-alcohol concentration and extrapolation of previous levels." At the hearing on the motion, the State intended to make an offer of proof regarding the expert's testimony, but after the court and counsel discussed the BAC nexus cases, the State asked for another hearing in order to permit the expert to testify in person. The court agreed.

{4} At the next hearing, the State called Ruth Luthi, a forensic toxicologist with the Scientific Laboratories Division (SLD), who explained that retrograde extrapolation is used to calculate a given BAC back to a prior time using generally accepted rates of alcohol burn-off. Assuming that Defendant had stopped drinking at midnight, that Defendant stopped driving at 5:45 a.m., and that Defendant's BAC six hours after driving was 0.02, Luthi testified that she was very comfortable giving an opinion as to the likely BAC range for Defendant at the time he was driving. Over Defendant's objection, the trial court accepted Luthi as an expert in retrograde extrapolation. Defense counsel waived cross-examination, and Luthi left the witness stand.

{5} At this point, the prosecutor thought the trial court had ruled that Luthi would be allowed to testify at trial. However, the court stated that it had not heard enough evidence on which to decide "whether in this case with these facts" extrapolation evidence could go before the jury. The prosecutor stated that he thought Luthi had already testified about the facts in the case as they pertained to extrapolation, but that if the court wanted more evidence, he would like to recall Luthi to the stand.

{6} Although defense counsel initially voiced no objection to the recall of Luthi, the trial court asked, "Procedurally, is there a mechanism available that allows me to put her back on without it being error on behalf of the defense?" There ensued a colloquy between the court and the prosecutor as to whether Luthi had actually testified about the result of retrograde extrapolation in this case under these facts. The prosecutor again offered to put Luthi back on the stand, and this time defense counsel objected. Without ruling on the objection, the trial court told the prosecutor to call his next witness.

{7} The prosecutor said he was calling Officer Mace to testify about Defendant's whereabouts between the scene of the accident and the blood draw, which was an issue raised by the trial court in the course of the hearing. But before Mace could take the stand, the trial court and the prosecutor engaged in another colloquy about whether the results of Defendant's blood tests were in evidence. The prosecutor then called Mace and attempted to get the lab report of Defendant's first blood test into evidence through Mace. When the court sustained defense counsel's hearsay objection to the lab report, the prosecutor again asked to recall Luthi, this time to lay a foundation for admission of the lab report.

{8} Again, the trial court stated that it was "not familiar with the mechanism that allows a witness once [sic] concluded testimony to be recalled" and asked the prosecutor for case law supporting such a recall. The prosecutor responded that recalling a witness is customary when new matters come up and noted that Luthi would again be subject to cross-examination if she were recalled. Ultimately, the court ruled that it would not

allow the State to recall Luthi because the court was "not familiar" with the "ability to bring the witness back when it is directly in a dispositive motion and not in a rebuttal setting." However, the trial court permitted the State to question Luthi in order to preserve its objection to the trial court's ruling on appeal.

{9} Luthi testified that she is the head of SLD's implied consent section, and consequently, she is the custodian of all blood samples and BAC reports that come in. She identified the lab report and testified that it appeared to be properly filled out. The report showed a BAC of 0.02. Luthi stated that, assuming that Defendant's drinking stopped around midnight, that the accident occurred between 5:45 and 6:00 a.m., and that Defendant's BAC at 12:05 p.m. was 0.02, retrograde extrapolation would lead to the conclusion that Defendant's BAC at the time of driving was between 0.08 and 0.14.

{10} The trial court then stated its ruling on the State's motion in limine. In the court's view, by seeking admission of Luthi's extrapolation testimony, the State was asking for an expansion of the perimeters of the BAC nexus cases so that a six-hour delay in testing would be acceptable. The trial court further noted that, unlike the circumstances in the BAC nexus cases, Defendant's BAC tested below the statutory limit and Defendant passed his field sobriety tests. Based on these facts and the case law, the trial court concluded that "the law does not allow Luthi to testify."

{11} On appeal, the State argues the trial court erred in (1) excluding Luthi's testimony on retrograde extrapolation, (2) refusing to make a pretrial ruling on the admissibility of Luthi's testimony regarding impairment, (3) denying the State's request to recall Luthi to the stand for additional examination, and (4) excluding the report of Defendant's BAC. Because we reverse on the first issue, we address the other three issues only to provide guidance on remand.

## DISCUSSION

### The Trial Court's Ruling

{12} The parties have different views of the trial court's ruling excluding retrograde extrapolation evidence. The State contends the trial court relied on a flawed reading of the BAC nexus cases, while Defendant argues that the trial court found the extrapolation evidence to be unreliable pursuant to *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993). We believe the State's view of the trial court's ruling is correct.

◼ {13} In *Alberico*, our Supreme Court explained that "Rule 11–702 [NMRA] establishes three prerequisites for admission of expert testimony: (1) the expert must be qualified, (2) the scientific evidence must assist the trier of fact, and (3) the expert may only testify to scientific, technical or other specialized knowledge." *Lopez v. Reddy*, 2005–NMCA–054, ¶ 11, 137 N.M. 554, 113 P.3d 377 (Ct.App. 2005) (citing *Alberico*, 116 N.M. at 166, 861 P.2d at 202 (internal quotation marks omitted)). There is no issue here regarding the first requirement because the trial court expressly found Luthi to be qualified. While the other two requirements are prerequisites to the admission of retrograde extrapolation evidence, the record establishes that the parties and the trial court never reached the applicability of Rule 11–702 and *Alberico*.

{14} The parties' arguments and the trial court's comments on the admissibility of Luthi's testimony focused on the requirements set out in the BAC nexus cases. Although defense counsel made passing references to matters reminiscent of the *Alberico* requirements, neither the attorneys nor the judge ever mentioned Rule 11–702, *Alberico*, or related cases, and the court's ultimate conclusion was clearly based on the BAC nexus cases. In announcing its ruling, the trial court reviewed the requirements of the BAC nexus cases and stated that, based on *Christmas, Martinez*, and *Baldwin* and the facts presented, the law would not allow Luthi to testify.

{15} While we conclude that the trial court based its decision on the BAC nexus cases, we do not mean to suggest that *Alberico* is irrelevant to a trial court's determination of whether to admit evidence of retrograde extrapolation. On remand, if the issue is raised, the trial court may consider whether

the requirements of Rule 11–702 and *Alberico* are satisfied.

### Retrograde Extrapolation

{16} Defendant contends the State failed to preserve its argument that the trial court misapplied the BAC nexus cases. We disagree. The record establishes that the prosecutor explicitly argued the meaning of the BAC nexus cases and pointed out his disagreement with the trial court's interpretation. *See State v. Varela*, 1999–NMSC–045, ¶ 26, 128 N.M. 454, 993 P.2d 1280 (explaining that in order to preserve an issue for appeal, a timely objection must specifically apprise the trial court of the nature of the claimed error and invoke an intelligent ruling thereon).

{17} We now turn to the merits of the trial court's ruling. Although the admission or exclusion of expert testimony is within the sound discretion of the trial court, "the threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal." *State v. Torres*, 1999–NMSC–010, ¶ 28, 127 N.M. 20, 976 P.2d 20. Thus, having determined that the trial court relied on the BAC nexus cases in ruling to exclude retrograde extrapolation testimony, we consider whether the trial court's analysis of those cases was correct.

{18} In any case where the State attempts to prove a violation of the per se DWI statute, which requires a minimum specific BAC at the time "[t]he defendant operated a motor vehicle," UJI 14–4503 NMRA, the critical inquiry is how to determine the defendant's BAC at the time of driving if there is a significant delay between the time of driving and the time BAC is measured. In the BAC nexus cases, this Court has attempted to provide guidance on this issue. We have noted that some delay between driving and testing is inevitable, and that an hour's delay would not be unreasonable. *Christmas*, 2002–NMCA–020, ¶¶ 23–25. However, "[t]he longer the delay between the time of [the] incident and [the] sample collection, the more difficult it becomes, scientifically, to draw reasonable inferences from one data point, back to the driving time."

*Id.* ¶ 20 (internal quotation marks and citations omitted). Consequently, when the delay between driving and testing is significant, the State must prove a nexus between the defendant's BAC score and the time of driving through evidence corroborating the inference that the defendant's BAC at the time of driving was at the statutory level of 0.08 or above. *See Christmas*, 2002–NMCA–020, ¶ 6 (assessing corroborative evidence where the delay was "about an hour"); *Martinez*, 2002–NMCA–043, ¶¶ 11 (evaluating corroborative evidence where the delay was one and a half hours); *Baldwin*, 2001–NMCA–063, ¶ 4 (reversing conviction where corroborative evidence was insufficient to support relation-back inference when the delay was two hours and fifteen minutes). We have declined to provide an exhaustive list of the types of corroborative evidence that would suffice, but we have said that

> [t]he evidence might include a police officer's observation of significant incriminating behavior on the part of the driver, or the evidence might include expert testimony relating the test result back in time to the time of driving.

*Id.* ¶ 2. Thus, we have suggested that retrograde extrapolation might suffice to provide a nexus between the results of a defendant's BAC test and the likely BAC at the time of driving.

{19} It appears from the trial court's comments to counsel during the hearing that the trial court viewed the BAC nexus cases as establishing three prerequisites to the admissibility of expert retrograde extrapolation evidence: (1) a delay between the time of driving and the measurement of BAC not exceeding two hours and fifteen minutes, (2) a BAC at, near, or above 0.08, and (3) evidence of some behavior by the accused that corroborates the inference of excessive BAC at the time of driving. The court noted that the longest delay found in the BAC nexus cases was two hours and fifteen minutes in *Baldwin* and that all of the BAC nexus cases involved BACs at or above 0.08. From these observations, the trial court apparently concluded that retrograde extrapolation evidence would be inadmissible if the delay exceeded two hours and fifteen minutes

and/or if the defendant's BAC tested below 0.08. The trial court also intimated that there must be some corroborative behavior evidence, such as inability to pass field sobriety tests, before expert retrograde extrapolation testimony could be admitted. The prosecutor tried unsuccessfully to persuade the court that the BAC nexus cases should not be read so narrowly.

{20} The trial court's analysis of the BAC nexus cases was flawed. The cases do not place an outer limit on the delay between the time of driving and testing. At most, they explain that a delay of any significance necessitates the introduction of some evidence providing a nexus between BAC and the time of driving. This is true whether the delay is two hours or six hours. While there may be a question as to the admissibility of the corroborative evidence on other grounds, such as reliability under Rule 11–702 and *Alberico,* the fact of significant delay alone does not render such evidence inadmissible as a matter of law.

{21} Similarly, the fact that Defendant's BAC six hours after driving was only 0.02, significantly below the per se level of 0.08, does not by itself mandate exclusion of corrobative evidence, also known as "relation-back evidence." *See Baldwin,* 2001–NMCA–063, ¶ 22. It is true that the BAC nexus cases emphasized the importance of relation-back evidence when the BAC was "0.08 or more" in *Baldwin,* 2001–NMCA–063, ¶ 8 or "0.08 or only marginally above" in *Martinez,* 2002–NMCA–043, ¶ 11, which may have suggested to the trial court that a BAC below 0.08 would not be susceptible to relation-back evidence. However, we read these phrases in the BAC nexus cases as simply illustrative of the problem created by a significant delay in BAC testing and the need for relation-back evidence to establish the BAC at the time of driving. If an expert can determine a defendant's likely BAC at the time of driving from a BAC, of whatever measurement, taken a significant time after driving, and if the trial court finds that the expert's methodology satisfies the requirements of Rule 11–702, then nothing in the BAC nexus cases requires exclusion of that expert's testimony. The issue in each of the

BAC nexus cases was the sufficiency of the evidence to convict the defendant of per se DWI without relation-back evidence, not the admission or exclusion of such evidence. *See State v. Montoya,* 2005–NMCA–078, ¶ 20, 137 N.M. 713, 114 P.3d 393 (Ct.App. 2005).

{22} In addition, corroborative behavior evidence is not a prerequisite to the admissibility of expert relation-back testimony. Behavior evidence and expert testimony are but two alternative methods of establishing the nexus between BAC and the time of driving. *Baldwin,* 2001–NMCA–063, ¶ 2 (noting that corroborative evidence "might include a police officer's observation of significant incriminating behavior on the part of the driver, or the evidence might include expert testimony relating the test result back in time to the time of driving"). Here, although Defendant apparently passed the field sobriety tests, Luthi nonetheless explained that retrograde extrapolation could establish that Defendant's BAC at the time of driving equaled or exceeded 0.08. Assuming Luthi's testimony passed muster for admissibility on other grounds, the testimony could conceivably provide the nexus between BAC and time of driving required by the BAC nexus cases.

{23} In summary, the BAC nexus cases do not establish a bright line rule circumscribing a trial court's decision to admit or exclude relation-back evidence. Instead, they provide guidance to a trial court in determining when relation-back evidence is necessary and the types of such evidence that may suffice to support a conviction. It is important to note that we are not holding that relation-back evidence is necessarily admissible, even after a time lapse as long as six hours. In the related case of *State v. Hughey,* 2005–NMCA–114, 138 N.M. 308, 119 P.3d 188 [No. 24,732 (N.M. Ct.App. June 27, 2005)], filed today, we have affirmed a trial court's exercise of discretion to exclude relation-back evidence when it found such evidence unreliable. On remand, the trial court may again consider the question of the admissibility of Luthi's testimony within the context of the considerations that ordinarily guide the sound exercise of discretion, such as the requirements of Rule 11–702.

*Other Arguments*

{24} Because we reverse the trial court's decision on the basis of its erroneous interpretation of the BAC nexus cases, we need not determine the other issues raised by the State. However, because these issues are likely to recur on remand, we briefly address them to provide guidance to the trial court and the parties.

■ {25} The State argues the trial court erred in excluding evidence regarding the relation of BAC to impairment. It appears the trial court excluded the evidence because the State failed to give Defendant notice that this evidence was a subject of the State's motion in limine. While the State concedes that the trial court excluded this evidence only for purposes of the motion in limine being heard at that time and not for all purposes, the State's main objection is that the trial court refused to make a pretrial ruling on the admissibility of the evidence. On remand, of course, if the State still wishes to introduce this evidence at trial, the trial court's ruling at the motion hearing does not preclude the State from attempting to do so, and the State is free to file motions seeking pretrial rulings on the admissibility of this evidence. We do not mean to suggest that Defendant cannot raise additional objections to this evidence at the appropriate time.

■ {26} Next, the State contends the trial court erred in ruling that the State could not recall Luthi to the stand after she had concluded her initial testimony. Although a trial court's denial of leave to recall a witness is discretionary, *see State v. Ortiz*, 92 N.M. 166, 169, 584 P.2d 1306, 1309 (Ct. App.1978), the trial court in this case did not exercise discretion when it denied the State's request to recall Luthi. Instead, the court stated that it was without the authority to permit the recall. While the court seemed to recognize its authority to permit recall of a witness at trial, it apparently believed that different rules pertain at a hearing on a motion. The trial court certainly has the authority to control the presentation of evidence and may permit a party to reopen its case. *See Sena v. N.M. State Police,* 119 N.M. 471, 474–75, 892 P.2d 604, 607–08 (Ct. App.1995). This is so regardless of whether the evidence is offered at trial or at a hearing. Thus, should the issue arise on remand, the decision whether to permit recall of a witness is entrusted to the trial court's sound discretion.

■ {27} Finally, the State argues that the trial court erroneously required it to prove Defendant's BAC at the hearing on the motion in limine in order to obtain a ruling on the admissibility of Luthi's retrograde extrapolation testimony. To the extent the trial court believed that admission of the BAC reports was a prerequisite to its consideration of the admissibility of Luthi's testimony, the trial court was mistaken. An offer of proof as to the BAC measurements would suffice in the context of ruling on the State's motion in limine. Of course, at trial, the State would be required to introduce the BAC reports in order to establish the foundation for Luthi's relation-back testimony. *Cf.* Rule 11–104(B) NMRA (stating that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition").

**CONCLUSION**

{28} We reverse the trial court's exclusion of expert relation-back testimony and remand for proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.