This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **No. 34,139**

**DOMINIQUE D. SMITH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Defender
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     Defendant Dominique D. Smith was convicted by a jury in the metropolitan court for driving under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-102(A) (2010, amended 2016) (DWI), open container, contrary to NMSA 1978, Section 66-8-138 (2001, amended 2013), driving without headlights, contrary to NMSA 1978, Section 66-3-802 (1978), and driving without a valid driver's license, contrary to NMSA 1978, Section 66-5-2(A)(1) (2007, amended 2013). Defendant appealed those convictions to the district court. The district court issued a memorandum opinion reversing Defendant's conviction for the open container violation and affirming the remaining convictions.

{2}     On appeal to this Court, Defendant only challenges his conviction for DWI. Defendant raises three issues on appeal: (1) several episodes of prosecutorial misconduct amounted to cumulative error, (2) there was insufficient evidence to support his conviction for DWI, and (3) the metropolitan court abused its discretion in rejecting Defendant's proposed jury instruction. We reverse Defendant's conviction for DWI.

**I.     BACKGROUND**

{3}     On June 30, 2012 around 2:30 a.m., Officer Jonathan McDonnell initiated a stop after observing Defendant was driving down Central Avenue in Albuquerque, New Mexico, without headlights. When asked why he was not using headlights,

2

Defendant stated that "he had forgotten to turn them on." Officer McDonnell noticed that Defendant's eyes were bloodshot and watery and that a strong odor of alcohol was coming from the passenger compartment. When the officer requested Defendant's driver's license, Defendant produced a New Mexico identification card. The officer then requested the assistance of a DWI officer.

{4}   Officer Gustavo Gomez, an officer with the DWI unit, was dispatched to provide assistance. Officer Gomez noticed that Defendant's eyes were red, bloodshot, and watery, and he noticed a "moderate" and "quite noticeable" odor of alcohol emitting from Defendant's breath. Defendant admitted that forty-five to sixty minutes prior to the stop, he had consumed one twelve-ounce can of beer.

{5}   Defendant agreed to perform field sobriety tests (FSTs), and he was cooperative during the tests. Defendant was instructed to perform three tests: horizontal gaze nystagmus (HGN), walk-and-turn (WAT), and the one-legged stand (OLS). When performing the HGN test, Defendant followed instructions but swayed two inches front to back. During the WAT test, Defendant stepped off the line two times and did not touch heel-to-toe by more than one-half inch on one step. With respect to the OLS test, Defendant swayed, put his foot down once, and raised his arms more than six inches from the side of his body.

{6} Officer Gomez concluded that Defendant had been driving while intoxicated and was unable to safely operate a motor vehicle. Defendant was placed under arrest. He agreed to take a breath alcohol test (BAT). Officer Gomez testified that after Defendant was arrested and while he was being transferred, he was arrogant, belligerent, and very disrespectful, but he eventually calmed down. The results of Defendant's BATs were .06 and .07.

{7} Midway through the trial, Defendant discovered that in addition to the video of the stop recorded by Officer Gomez, a second video was recorded by Officer McDonnell but was not tagged into evidence. Defense counsel stated that she was unaware of the video and that she could not remember if the officer was asked about it during the interview. Officer McDonnell explained that the video was not tagged into evidence because he was not the arresting officer and that he was not asked to preserve the video. Officer McDonnell further explained that video recordings in domestic violence cases and cases involving arrests must be tagged into evidence, but this did not happen as he was not the officer who conducted the arrest. Defendant requested an instruction in connection with the lost video recording; the request was denied.

{8} The jury found Defendant guilty of driving without a valid driver's license, operating a vehicle with no headlights, possession of an open container, and driving

while under the influence of intoxicating liquor (impaired to the slightest degree). Defendant appealed his convictions to the district court. The district court conducted a record review of the metropolitan court trial, reversed Defendant's conviction for possession of an open container, and entered a written opinion affirming Defendant's three remaining convictions. Defendant has only appealed the affirmance of his DWI conviction to this Court.

## II.    DISCUSSION

### A.    Claim of Prosecutorial Misconduct

{9}    Defendant claims that the prosecutor engaged in misconduct by introducing irrelevant facts, failing to control the State's witnesses, misleading the jury regarding the requirements for proving the charge for open container, and allowing Officer Gomez to provide improper opinion testimony in connection with Defendant's claim that he drank only one beer. Defendant asserts that the prosecutor's actions amounted to cumulative error, and he was denied a fair trial as a result. We agree with Defendant's claim that admission of Officer Gomez's opinion testimony amounted to reversible error. Therefore, it is unnecessary to address the other arguments made by Defendant under this issue. We note that admission of the officer's testimony was not a matter of prosecutorial misconduct, but rather evidentiary error.

{10} The opinion testimony about which Defendant complains consisted of the following: Officer Gomez testified that based on his experience and training, Defendant's BAT scores of .06 and .07 did not correlate with Defendant's claim that he drank only one beer. When the issue arose at trial, defense counsel argued that Officer Gomez should not be allowed to testify regarding "retrograde extrapolation." The prosecutor reported that his intention was to ask the officer if, "in his experience, does the contradiction of his [consumption] of one beer equal . . . the performance on the [FSTs]." Defense counsel still believed that the prosecutor was basically going to argue retrograde extrapolation. The district court ruled that the officer could testify that one beer was inconsistent with Defendant's performance on the FSTs, but could not make other types of estimates, such as opining that Defendant must have consumed five beers.

{11} Retrograde extrapolation is a tool used in DWI cases when the delay between driving and testing is significant, and the State must show a connection between a defendant's BAT score and the likely BAT score at the time of driving. *See State v. Silago*, 2005-NMCA-100, ¶ 18, 138 N.M. 301, 119 P.3d 181. At trial, defense counsel argued that Officer Gomez should not be allowed to explore the idea of retrograde exploration and later argued that the officer's testimony was akin to retrograde extrapolation. Essentially, defense counsel claimed that the officer could not

6

extrapolate from Defendant's BAT scores to arrive at an amount of alcohol he may have consumed. Although this argument does not fit squarely into the description of retrograde extrapolation, it was sufficient to alert the district court to the argument made on appeal that Officer Gomez should not have been allowed to give his opinion and that Defendant's BAT scores were inconsistent with his testimony that he consumed only one beer.

{12} Officer Gomez had extensive training and experience with DWI cases, including course training, participation in wet labs, and involvement in numerous DWI investigations. Officer Gomez testified that he participated in drinking labs in which volunteers drink different levels of alcohol and are then asked to perform FSTs. These tests allowed police cadets to observe different levels of impairment and performance on FSTs as a result of different individuals consuming different amounts of alcohol.

{13} Defendant claims that Officer Gomez did not have the qualifications to testify that "the DWI evidence he collected was inconsistent" with Defendant's admission of having consumed one beer forty-five minutes to an hour before the stop. Defendant contends that the officer's training did not provide him with the requisite expertise to use performance of FSTs to determine the amount of beer an individual had consumed. However, that was not the officer's testimony. Although, as discussed

7

earlier, the prosecutor suggested to the metropolitan court that he planned to rely on the officer's experience to show that consumption of one beer was not consistent with Defendant's performance on the FSTs, that is not the information that the prosecutor elicited from Officer Gomez. Instead, in response to the prosecutor's question, Officer Gomez testified that, based on his experience and training, Defendant's BAT scores of .06 and .07 did not correlate with Defendant's claim that he drank only one beer.

{14} We review the metropolitan court's evidentiary ruling for an abuse of discretion, and the court's ruling will be overturned on appeal only when the facts and circumstances of the case do not support its logic and effect. *See State v. Martinez*, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894. "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise[,] if the expert's scientific, technical, or other specialized knowledge will [assist] the trier of fact to understand the evidence or to determine a fact in issue." Rule 11-702 NMRA.

{15} While Officer Gomez had extensive training, education, and experience in DWI matters, there was no showing that he possessed the scientific background or training to provide an expert opinion regarding the correlation between the amount of alcohol consumed by an individual and a specific BAT score. "[I]t is error to admit expert testimony involving scientific knowledge unless the [state] first establishes the

evidentiary reliability of the scientific knowledge." *State v. Torres*, 1999-NMSC-010, ¶ 24, 127 N.M. 20, 976 P.2d 20. The State did not establish that Officer Gomez had requisite expertise to testify about a correlation between a person's BAT scores and the number of drinks that person had consumed. Absent evidence to show that Officer Gomez possessed the training and expertise to testify as he did, the proper foundation for the introduction of such testimony was lacking. Therefore, Officer Gomez's opinion testimony was not admissible under Rule 11-702.

{16}     In coming to this conclusion, we point to the discussion in a very similar case. *See State v. Armijo*, 2014-NMCA-013, 316 P.3d 902. The officer in *Armijo* was asked if the BAT scores of .06 and .05 were consistent with the defendant's admission of having consumed only one beer to which the officer responded, "no, sir." *Id.* ¶ 5. This Court determined that the prosecutor's questioning of the officer was an attempt to elicit opinion testimony without the proper foundation. *See id.* ¶¶ 7, 12. The same reasoning applies in this case. The prosecutor's questions to Officer Gomez were an attempt to elicit expert opinion testimony on a matter for which the officer was not qualified. Without the proper qualification to give such expert opinion testimony, there was no foundation established for admission of his testimony. *See id.* ¶ 7. Admission of Officer Gomez's testimony was error.

{17} The State contends that any error was harmless. According to the State, the evidence of guilt was "so overwhelming" that there is no reasonable probability that the error affected the verdict. Again in *Armijo*, we were presented with a similar harmless error argument. *Id.* ¶ 8. In *Armijo*, when the officer made the erroneous statement, the trial court promptly issued an admonishment to the jury. *Id.* ¶ 5. This Court noted that, although the evidence presented in support of DWI under an "impaired to the slightest degree" standard was the kind of evidence that is generally considered sufficient to support a conviction, the overall review of the trial proceedings led to the conclusion that there was a reasonable probability that the officer's inadmissible testimony led to the verdict. *Id.* ¶¶ 16-18.

{18} Here, Officer Gomez's erroneous testimony closely matched the testimony of the officer in *Armijo*. And this attack on Defendant's testimony and credibility cannot be considered unintentional or unsolicited by the State. *See id.* ¶¶ 9-11. Unlike *Armijo*, there was no curative statement or instruction given to the jury following the inadmissible testimony. Given the similarities between this case and *Armijo*, and the lack of any admonishment or curative instruction by the metropolitan court, we reach the same conclusion as to the potential effect of the officer's testimony on the jury's verdict. We conclude that the error in this case was not harmless. We therefore reverse Defendant's DWI conviction and remand to the metropolitan court for retrial.

## B. Sufficiency of the Evidence to Establish DWI

**{19}** We address Defendant's claim that the evidence was insufficient to support his DWI conviction because finding that the evidence was insufficient to support Defendant's conviction would provide Defendant with greater relief. *See State v. Santillanes*, 1990-NMCA-035, ¶¶ 1-2, 109 N.M. 781, 790 P.2d 1062.

**{20}** Defendant was convicted of DWI, impaired to the slightest degree in violation of Section 66-8-102(A). "A person is under the influence of intoxicating liquor if[,] as a result of drinking liquor[,] the driver was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the driver and the public." *State v. Sanchez*, 2001-NMCA-109, ¶ 6, 131 N.M. 355, 36 P.3d 446 (alterations, internal quotation marks, and citation omitted).

**{21}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*,

11

2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

{22} The evidence showed that Defendant was driving in the middle of the night without headlights, had bloodshot and watery eyes, emitted a "quite noticeable" odor of alcohol from his breath, admitted drinking a twelve-ounce beer forty-five minutes to an hour prior to the stop, exhibited clues relating to impairment on all three FSTs, became belligerent upon arrest, and produced BAT results of .06 and .07. The evidence was sufficient to support Defendant's conviction for DWI, impaired to the slightest degree. *See State v. Vargas*, 2017-NMCA-023, ¶¶ 10-12, 389 P.3d 1080.

**C.      Denial of Requested Instruction Was Not an Abuse of Discretion**

{23} Defendant asserts that the metropolitan court abused its discretion when it denied his proffered missing evidence instruction. Because this issue is likely to recur on retrial, we address the issue in the interest of judicial economy. Whether a court properly refused a tendered jury instruction "is a mixed question of law and fact." *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted); *see State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183 (stating that appellate courts review "factual matters with deference to the [trial] court's findings if substantial evidence exists to support them," and review

12

the trial court's application of law to the facts de novo). "A defendant is entitled to an instruction on a theory of the case where the evidence supports the theory." *State v. Salazar*, 1997-NMSC-044, ¶ 50, 123 N.M. 778, 945 P.2d 996. A trial court's ruling as to the proper remedy for evidence that has been lost or destroyed will be reviewed for an abuse of discretion. *See State v. Chouinard*, 1981-NMSC-096, ¶¶ 25-26, 96 N.M. 658, 634 P.2d 680. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted).

**{24}** Defendant argues that Officer McDonnell intentionally failed to preserve his lapel video contrary to the Albuquerque Police Department's standard operating procedures. Defendant further argues that because Officer McDonnell's intentional failure to preserve the evidence was done in bad faith, Defendant is relieved of having to show the lost evidence was material or that he suffered any prejudice. Alternatively, Defendant argues if the failure to preserve the evidence was not done in bad faith, the evidence was material because it would have shown whether his headlights were in fact on or off when the officer approached his vehicle, and would have been invaluable in evaluating both officers' credibility. The State argues that Defendant's request for the lost evidence instruction was not an available sanction under the

*Chouinard* test. *See* 1981-NMSC-096, ¶ 16. Nonetheless, the State argues that pursuant to standard operating procedure, Officer McDonnell was not required to tag his lapel video into evidence because he was not the arresting officer, nor did the arresting officer request that he tag it into evidence. Thus, Officer McDonnell did not intentionally fail to preserve his lapel video recording.

{25} Our Supreme Court has adopted a three-part test to determine whether the State's failure to preserve Officer McDonnell's lapel video evidence is reversible error. *See id.* We first inquire whether the State either breached some duty or intentionally deprived Defendant of the lapel video evidence; second, whether this lost evidence must have been material; and last, whether any prejudice to Defendant resulted. *See id.*

{26} Defendant requested the following jury instruction: "If, after considering all of the evidence and testimony, you find that the State lost, failed to preserve, or destroyed any evidence, you can infer that the missing evidence would be favorable to [D]efendant." The district court refused the instruction.

{27} Defendant argues that the State engaged in "bad faith" when it breached a duty that intentionally deprived Defendant of evidence. Defendant claims that even if the State's actions did not amount to "bad faith," he established that the lapel video recording was material to his defense and that he was prejudiced by the loss of the

14

recording. According to Defendant, where the loss of the recording was intentional, the refusal to give the proffered instruction as a "limited sanction" amounted to an abuse of discretion.

{28} Imposition of sanctions for violation of a discovery order that results in prejudice to an opposing party is within the trial court's discretion, and an abuse of that discretion will be found when the court's "ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. Sanctions are determined by weighing the degree of the state's culpability against the level of prejudice to the defendant. *Id.*; *Chouinard*, 1981-NMSC-096, ¶¶ 12-26 (discussing non-disclosure of evidence). A defendant must provide proof of prejudice that is more than speculative—a mere assertion of prejudice will not suffice. *See Harper*, 2011-NMSC-044, ¶ 16.

{29} Defendant presented only bald assertions that the loss of the video was intentional and in "bad faith," but provides no evidence or testimony to support those statements. Defendant argues that the recording would have shown whether his headlights were on or off at the time of the stop and would have shown the interaction between Officer McDonnell and Defendant, as well as the interaction between Officer Gomez and Defendant. Officer McDonnell testified that video recordings are typically tagged in domestic violence cases and in cases involving arrests. He was not the

arresting officer, the arresting officer did not request that his video be tagged into evidence, and therefore, he did not tag his recording into evidence. The officer's reasoning simply does not indicate that he deliberately failed to tag his recording into evidence with the intent to deprive Defendant of that evidence. We reject Defendant's claim that the State acted in bad faith.

{30}     As noted by the district court, there is no showing that the lost recording would contradict the testimony by the officers. The district court also provided a remedy to Defendant by allowing him to cross-examine Officer McDonnell about the lost evidence. *See Chouinard*, 1981-NMSC-096, ¶ 25 (noting that the importance of the lost evidence may be affected by the opportunity to cross-examine the witness). The Defendant's claims are insufficiently developed and speculative. A possibility that some undisclosed information in the lapel video recording might have helped Defendant in his defense was not sufficiently developed to demonstrate materiality. *See State v. Branch*, 2016-NMCA-071, ¶ 56, 387 P.3d 250, *cert. granted*, 2016-NMCERT-007, __ P.3d __. Furthermore, the other video recording made by Officer Gomez shortly after the stop commenced was available to Defendant, Defendant was given ample opportunity to cross-examine the officers about the details surrounding the stop, and Defendant had the opportunity to inquire into the loss of Officer McDonnell's missing lapel video.

{31} Based upon the record in this case, Defendant failed to prove that he was prejudiced by the loss of the video recording. *See id.* ¶ 57. We conclude that the metropolitan court did not abuse its discretion in refusing Defendant's requested instruction.

## III. CONCLUSION

{32} For the foregoing reasons, we reverse Defendant's DWI conviction and remand this case to the metropolitan court for a new trial on the DWI charge.

{33} **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**