2002-NMCA-043

45 P.3d 41

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eddie Ray MARTINEZ, Defendant–
Appellant.**

**No. 22,005.**

Court of Appeals of New Mexico.

Feb. 15, 2002.

Certiorari Denied, No. 27,404,
April 10, 2002.

**102**

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Santa Fe, NM, Thomas DeMartino, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

*OPINION*

BOSSON, Chief Judge.

{1} Defendant appeals from a judgment by the Second Judicial District Court, which affirmed his metropolitan court conviction for DWI (first offense). Defendant was convicted under NMSA 1978, Section 66–8–102(C) (1999), which prohibits driving with "an alcohol concentration of eight one-hundredths or more in his blood or breath." Defendant argues that there was insufficient evidence to support his conviction based on breath alcohol concentration (BAC) tests that were not administered until an hour and thirty-one minutes after he finished driving and yielded results of 0.09/0.09. We affirm Defendant's conviction.

**BACKGROUND**

{2} On October 20, 1999, Albuquerque Police Detective Ronnie Watkins and Officer Jerry Potter observed Defendant's vehicle as it failed to stop at a stop sign. Detective Watkins and Officer Potter testified that they also observed the vehicle weaving in its lane and taking an unusually wide turn, before pulling Defendant over at approximately 10:11 p.m.

{3} Both officers testified that, after Defendant stopped his vehicle, he extended both hands and his car keys from the car window. The officers considered this unsolicited behavior unusual and inconsistent with what they ordinarily encounter during a traffic stop. They observed that Defendant had bloodshot, watery eyes, and smelled of alcohol. He also exhibited a "thick tongue" and slurred speech. Defendant admitted to drinking earlier in the evening.

{4} Detective Watkins administered four field sobriety tests. Defendant did not perform well on any of them. Defendant initially gave the officers a false name, and did not reveal his true identity until thirty or forty minutes later.

{5} Officer Potter, who was certified to operate the breathalyzer machine, observed Defendant at the police station for the prescribed twenty-minute observation period before testing Defendant's BAC level at 11:42 and 11:44 p.m., approximately an hour and a half after Defendant was pulled over. Both tests yielded a BAC of 0.09.

{6} Several factors contributed to the delay of an hour and a half in testing Defendant. Because the officers determined that both Defendant and his passengers were intoxicated, arrangements had to be made to tow the vehicle before transporting Defendant to the police station. Once at the police station, when Defendant was removed from the car, the officers found a handgun stuffed between the cushions of the patrol car. The officers were then obliged to question Defendant about the gun. Ultimately, no charges were brought against him because of the handgun. In addition, Defendant was observed for twenty minutes before the test was administered, as required by law. *See State v. Gardner*, 1998–NMCA–160, ¶ 5, 126 N.M. 125, 967 P.2d 465 (holding breath alcohol test results inadmissible unless officer complies with twenty-minute continuous observation period).

{7} Defendant was originally charged with violations of both Section 66–8–102(A), the statute that describes the more general offense of driving under the influence of alcohol, as well as Section 66–8–102(C), which describes the per se violation of driving with a BAC of 0.08 or higher. *See State v. Dutchover*, 85 N.M. 72, 73, 509 P.2d 264, 265 (Ct.App.1973) (holding that "under the influence," for the purpose of Subsection (A), means that a defendant was "to the slightest degree . . . less able, either mentally or physically . . ., to exercise the clear judgment and steady hand necessary to handle an automobile with safety to himself and the public"). At trial, however, the State changed its mind. At Defendant's request, the State, somewhat

inexplicably, withdrew its jury instruction regarding the DWI offense under Subsection (A) and proceeded solely under the per se offense set forth in Subsection (C). The Subsection (C) instruction, as submitted to the jury, tracked the language of UJI 14–4503 NMRA 2002, and instructed the jury that, to convict, it had to find that Defendant had a BAC of 0.08 or more "[a]t the time" he was driving. Section 66–8–102(C); *see also State v. Harrison*, 115 N.M. 73, 78, 846 P.2d 1082, 1087 (Ct.App.1992) (discussing the per se violation of the DWI statute).

{8} The jury convicted Defendant of DWI under Subsection (C), as well as running a stop sign, driving without proof of insurance, and unlawfully concealing his identity. Defendant appeals only the DWI conviction.

## DISCUSSION

{9} In analyzing sufficiency of evidence issues, we must "resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Foster*, 1999–NMSC–007, ¶ 42, 126 N.M. 646, 974 P.2d 140; *accord State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). Viewing the evidence in the light most favorable to the verdict, we determine whether the evidence presented could justify, to a reasonable mind, a finding that each element of the crime charged was established beyond a reasonable doubt. *State v. Salgado*, 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661.

### Breath–Alcohol Level at the Time of Driving

{10} On appeal, Defendant argues that there was insufficient evidence for a rational jury to relate his 0.09 BAC test results back to the time of driving. He argues that the jury had no factual basis in the record from which to infer, beyond a reasonable doubt, that his BAC at the time of driving was either higher or lower than the 0.09 recorded an hour and thirty-one minutes *after* driving. Defendant relies heavily on *State v. Baldwin*, 2001–NMCA–063, ¶ 2, 130 N.M. 705, 30 P.3d 394 in which we held that a marginal (0.08) BAC reading, obtained over two hours after the time of driving, would

not, considered alone, support a DWI conviction under Subsection (C). We noted in *Baldwin* that the BAC reading lacked necessary corroboration, such as expert testimony relating the test results back to the time of driving, or observations of significant incriminating behavior on the part of the driver. *See id.*

{11} We observed in *Baldwin* that "[t]iming is an essential element of the crime . . . [requiring that t]he [s]tate . . . prove a nexus between a BAC of 0.08 or more and the time 'defendant operated a motor vehicle.'" *Id.* ¶ 8 (quoting UJI 14–4503). Since *Baldwin*, we have acknowledged that some delay is inevitable between the time of driving and the time a BAC test is administered. *See State v. Christmas*, 2002–NMCA–020, ¶ 23, 131 N.M. 578, 40 P.3d 1035 (acknowledging that the legislature and our Supreme Court must have contemplated "some reasonable and inevitable delay in testing, and intended that otherwise valid test results would be admitted into evidence notwithstanding such a [reasonable] delay"). When the delay in testing is not insignificant and the test results are at 0.08 or only marginally above, we must examine the specific facts of each case to determine whether the State has demonstrated a sufficient evidentiary nexus between the BAC test result and the time of driving.

{12} This Court has noted that "[t]he longer the delay between the time of [the] incident and [the] sample collection, the more difficult it becomes, scientifically, to draw reasonable inferences from one 'data point,' back to the 'driving' time." *Baldwin*, 2001–NMCA–063, ¶ 17, 130 N.M. 705, 30 P.3d 394 (quoting E. Fitzgerald & D. Hume, *Intoxication Test Evidence: Criminal and Civil* § 2:30 [Lawyer's Co-op 1987 & 1994 Supp.]) (internal quotation marks omitted). Courts that have reversed DWI convictions based upon a lack of relation-back evidence have generally done so when the lapse of time between the time of driving and the time of BAC testing is at least two hours. We relied on some of those opinions in *Baldwin*, 2001–NMCA–063, ¶¶ 4, 18, 130 N.M. 705, 30 P.3d 394 (reversing conviction where there was time lapse of *two hours and fifteen min-*

utes ). *See also State v. Gallow,* 185 Ariz. 219, 914 P.2d 1311, 1313 (Ariz.Ct.App.1995) (holding that, where BAC level taken *within two hours* of driving and the state's criminologist could not testify that the defendant's BAC at the time of driving exceeded the statutory limit beyond a reasonable doubt, the jury was not permitted to make such an inference); *Haas v. State,* 597 So.2d 770, 775–76 (Fla.1992) (Kogan, J., concurring in part, dissenting in part) (expressing belief in concurring opinion that it would amount to a due process violation to allow the State to presume defendant's BAC at the time of driving from test results taken *several hours* later); *Allman v. State,* 728 N.E.2d 230, 232–34 (Ind.Ct.App.2000) (reversing DWI conviction where BAC level not measured within *three hours* of driving); *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162, 165–66 (1996) (holding that a statute permitting conviction based on a BAC taken *three hours* after driving was unconstitutional); *Commonwealth v. Modaffare,* 529 Pa. 101, 601 A.2d 1233, 1235 (1992) (reversing DWI conviction where a marginal BAC level was taken *almost two hours* after driving and where there was no corroborating evidence probative of intoxication), *superceded by statute as stated in Commonwealth v. Brehm,* 444 Pa.Super. 138, 663 A.2d 712, 719 (1995).

{13} In contrast to *Baldwin* and these other cases, the lapse of time in Defendant's case was only one and a half hours. Although the burden remained on the State to prove the elements of the crime as set forth in the jury instruction, it required somewhat less corroborative evidence than in *Baldwin* to establish a nexus between Defendant's BAC test results and the time he was driving. We now examine that evidence to ascertain whether a rational jury could have drawn reasonable inferences regarding Defendant's BAC at the time of driving.

{14} At trial, Officer Potter testified that Defendant admitted to having consumed alcohol three hours before he took the wheel. As we recently discussed in *Christmas,* it takes time for alcohol to be absorbed into the bloodstream, depending on any number of physiological and situational factors. *See id.* ¶ 26 (summarizing expert testimony regard-

ing the "alcohol time response curve," which is characterized by three basic phases: "absorption," "peak[ing]," and "elimination"). Accordingly, an individual's BAC continues to rise for some unknown period of time after consuming alcohol. In some instances, therefore, it is possible that a BAC at the time of driving may actually be lower, not higher, than at the time of a subsequent BAC test. *See id.* ¶ 28; *Modaffare,* 601 A.2d at 1234–35 (reversing a defendant's DWI conviction where BAC reading was taken one hour and fifty minutes after driving, and evidence was presented that the defendant's BAC may have "peaked" after driving, but before the test was administered).

{15} In *Christmas,* we concluded that a considerable time lapse between drinking and driving, coupled with expert testimony regarding the metabolism of alcohol, supported a jury inference that the defendant's BAC had peaked earlier in the evening and was on the decline at the time of BAC testing. *Id.* ¶ 28. It followed, therefore, that the BAC at the time of driving was likely higher, not lower, than the subsequent BAC test reading. *Id.*

{16} In the case before us, as in *Christmas,* evidence supports a reasonable jury inference that Defendant's BAC level at the time of driving was likely higher, not lower, than the 0.09 recorded an hour and a half later. Defendant admitted that he had consumed alcohol three hours before he drove, which was four and a half hours before the BAC tests were administered. Based on a three hour delay between drinking and driving, the jury could have reasoned that Defendant's BAC had likely peaked earlier in the evening, before driving, and was well into decline by the time he was stopped. *Cf. Modaffare,* 601 A.2d at 1234–35. In addition, the officers testified at trial about fluctuations in BAC levels, including testimony that BAC may decrease over time. Thus, the jury could have reasonably inferred that Defendant's BAC at the time of driving was likely higher, or at the very least not lower, than the BAC readings of 0.09 recorded an hour and a half later.

{17} In addition to the considerable lapse of time between drinking and driving, there

was evidence of erratic and incriminating behavior on Defendant's part, which the officers regarded as unusual, and which went beyond the usual evidence of slurred speech, bloodshot eyes, and smelling of alcohol. Both officers testified that Defendant's act of extending his hands and car keys out the window was unusual and inconsistent with what they ordinarily encountered during a traffic stop. Defendant then gave the officers a false name in an attempt to conceal his identity. The jury could have interpreted these actions as evincing a consciousness of guilt on Defendant's part that could, in turn, help connect Defendant's BAC reading of 0.09 to the time of driving. This corroborating evidence was in addition to Defendant's unsatisfactory performance on the field sobriety tests. *See State v. Cavanaugh,* 116 N.M. 826, 829–30, 867 P.2d 1208, 1211–12 (Ct.App.1993) (affirming DWI conviction where jury could have reasonably inferred that BAC exceeded legal limit at time of driving because evidence of defendant's egregious behavior supported such an inference); *see also Commonwealth v. Osborne,* 414 Pa.Super. 124, 606 A.2d 529, 531 (1992) ("[T]he stronger the inference of guilt, the less significant is the necessity for evidence of relating back. Conversely, the weaker the inference of guilt, the more vital is the necessity for evidence of relating back an accused's BAC test result to the time of driving."); *cf. Baldwin,* 2001–NMCA–063, ¶¶ 10–13, 130 N.M. 705, 30 P.3d 394 (recognizing no such corroborating behavior where the driver's actions were so unremarkable that the trial court granted the defendant's motion for a directed verdict with respect to the DWI charge under Subsection (A)).

## Correlation of Performance on Field Sobriety Tests to Any Specific BAC

{18} As a collateral issue to his argument under *Baldwin,* Defendant also contends that it was fundamental error to allow portions of Officer Watkins' testimony into evidence related to Defendant's performance on the one-leg stand test, one of the field sobriety tests. Because Defendant did not object to this testimony below, he is relegated to a claim of fundamental error or plain error.

{19} Defendant argues that Detective Watkins did not have the expert qualifications to draw a correlation in his testimony between Defendant's performance on the one-leg stand test and any specific BAC level. Detective Watkins testified that, according to his field sobriety training, someone with a BAC of around 0.10, which was at one time the legal limit in New Mexico, would usually be able to hold his foot up to a count of twenty-five, but "most of them would put their foot down from twenty-five to thirty, somewhere in that neighborhood. That was a very good indication, with a little bit of arm balancing, about what their blood alcohol level might be."

{20} We are not persuaded. The detective did not, as Defendant contends, testify that Defendant actually *had* a BAC of 0.10. In fact, both officers testified that they did *not* know Defendant's BAC at the time he was driving. The testimony in question explains that the purpose of the thirty count is to assist in the detection of marginal levels of intoxication, which might not otherwise be readily apparent. The National Highway Traffic Safety Administration Manual for DWI Detection and Standardized Field Sobriety Testing, from which officers are trained, indicates that research has shown that a person with a BAC above 0.10 can maintain balance for up to twenty-five seconds, but seldom as long as thirty. *NTSA Manual,* at VIII 24 (1992). Although Detective Watkins did think it significant that Defendant failed to maintain the one-leg stand to the count of thirty, he did not draw any direct correlation between Defendant's performance and a specific BAC level. We regard the officer's acknowledgment as significant that he did not know Defendant's BAC at the time of driving.

{21} Furthermore, the admission of Detective Watkins' testimony, even if erroneous, did not rise to the level of either fundamental or plain error. Considerably more is required under either standard. *See State v. Traeger,* 2001–NMSC–022, ¶ 18, 130 N.M. 618, 29 P.3d 518 (noting that doctrine of fundamental error allows an appellate court to review a criminal conviction for errors that

undermine the integrity of the judicial process); *State v. Cunningham*, 2000–NMSC–009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (" 'The doctrine of fundamental error is [reserved] for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand.' " (quoting *State v. Rodriguez*, 81 N.M. 503, 505, 469 P.2d 148, 150 (1970))); *State v. Paiz*, 1999–NMCA–104, ¶ 28, 127 N.M. 776, 987 P.2d 1163 (noting that plain error doctrine should be used "sparingly," when an error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' " (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))).

## CONCLUSION

{22} We affirm Defendant's conviction for DWI.

{23} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JAMES J. WECHSLER, Judges.