**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                   **NO. 27,015**

**TIMOTHY THYBERG,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**KENNEDY, Judge.**

Defendant was found guilty of attempted armed robbery, aggravated battery, and concealing his identity for an incident in which he broke a beer bottle over the head of pizza delivery man Marcus Riley. The State alleged that Defendant attempted to take money from Riley while threatening him with the bottle. Riley did not turn

over any money. Defendant appeals on two grounds: first, that his attorney was ineffective in not seeking to suppress the results of three show-up identifications; and second, that the district court improperly denied his motions for a directed verdict.

We affirm Defendant's convictions.

**FACTUAL BACKGROUND**

James Hasse and Frank Werner were waiting for a pizza in their apartment when they observed a stranger walking around in the courtyard outside. As Riley approached their apartment with the pizza, Hasse and Werner saw the stranger walk up behind Riley. Riley and the stranger briefly spoke and afterwards Riley delivered the pizza to Hasse and Werner, who paid him. Hasse and Werner had not been more than ten feet away when they saw the stranger in the courtyard, and the courtyard area in which they saw him was well-illuminated. When Riley left, the unknown man followed approximately five feet behind.

As Riley neared his vehicle, he was hit in the back of the head with a beer bottle. The bottle broke and caused a gash behind his ear. Riley then turned and came face to face with the stranger, who stood five to six feet away. The parking lot was partially lit, though it was after dark. The man demanded Riley turn over all his money, and Riley refused. The man persisted, and the encounter lasted a few more minutes, until two young women broke up the confrontation. The women took the

man back to a truck and drove away. Riley drove back to the pizza store, where he reported the attack to the police, describing his assailant and the truck in which he fled. The police responded.

The police broadcast the information, and they soon located a truck matching the one Riley described. Defendant was not in the truck, but Jarina Pena was, and she told police that the man they were searching for was currently at her apartment. She then directed police there.

The police found Defendant lying on a bed at Pena's apartment. He generally fit the witnesses' description as to height, age, and build, and he wore a white t-shirt identical to the one described by Hasse and Werner. Police also found a hat similar to the one described by the witnesses on a dresser next to the bed on which Defendant was lying. When confronted, Defendant refused to cooperate with the police and gave an alias.[1]

Owing to the freshness of the crime, the police asked Riley if he could identify Defendant in a one-on-one show-up identification. Riley did so and noted that Defendant had changed his clothes. Riley also identified the two young women who had driven away with Defendant. Hasse and Werner were also asked to participate in show-up identifications. Hasse identified Defendant as the person he had seen and

---

[1]Defendant does not contest his conviction for concealing his identity.

also noted his change of clothes. Werner was less sure initially but became more positive when he saw Defendant's ponytail.

At trial, Riley identified Defendant as the man who attacked him. Hasse likewise identified Defendant without hesitation. Werner also identified Defendant, but explained that he was only ninety percent certain and attributed any remaining uncertainty to the passage of time prior to trial. A police officer identified Defendant as matching the descriptions taken from the three witnesses. The jury also heard a recorded statement made by Jessica Serna, one of the women who allegedly left with Defendant in the truck. In her statement, Serna confirmed Defendant as the person who tried to rob Riley. Pena testified that Defendant, Serna, and another woman went out together that evening in a truck matching the one Riley had seen. She also indicated that Defendant had talked about his intention to get "some kind of money or something." The jury also considered evidence that the broken beer bottle recovered from the scene was the same brand as a beer carton found in the truck.

Defendant made two motions for a directed verdict—one at the end of the State's case in chief and the other at the conclusion of all evidence. The district court denied both, and the jury convicted Defendant of aggravated battery and attempted armed robbery.

**DISCUSSION**

Defendant argues that he received ineffective assistance of counsel. Specifically, he claims that his attorney should have moved to suppress the statements of witnesses identifying him as the perpetrator. To prevail in this argument, Defendant must prove that his attorney's actions at trial call "into doubt the reliability of the trial results." *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 18, 130 N.M. 179, 21 P.3d 1032 (internal quotation marks and citation omitted). Accordingly, we must analyze "whether the record supports [such a] motion" and whether "a reasonably competent attorney could have decided that a motion to suppress was unwarranted." *State v. Martinez*, 1996-NMCA-109, ¶¶ 33, 36, 122 N.M. 476, 485, 927 P.2d 31 (internal quotation marks and citation omitted). We begin with the general presumption that counsel's representation was effective. *State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162.

**The Record Does Not Support a Motion to Suppress**

*Patterson* governs this case. In convictions involving show-up identifications, we balance such an identification's inherently suggestive nature against the presence of any sufficient indica of reliability. *Patterson*, 2001-NMSC-013, ¶¶ 21-22. The salient facts are not in dispute, but Defendant argues their legal effect.

In this case, a wealth of circumstantial and direct evidence establishes a strong connection between Defendant and the crimes committed against Riley. Such

evidence, standing alone, supports Defendant's conviction and renders an evaluation of the identifications unnecessary. Based on facts not disputed by either party, the police almost immediately found the truck described by witnesses, in which Defendant had left the scene. When located, Pena immediately told police to go to her apartment where they would find Defendant. She also testified that Defendant left her apartment with Serna, who neither party disputes broke up the confrontation, and that Defendant had mentioned his intention to get some money. There is no question that Defendant was the only male occupant of the truck leaving the incident. The broken beer bottle found at the scene matched the carton found in the truck. Furthermore, Defendant was found on a bed next to a hat that had been described by eyewitnesses as being worn by the assailant. Defendant gave false information concerning his identity, and it is well-established that juries may consider such evidence in determining a defendant's guilt. *State v. Martinez*, 2002-NMCA-043, ¶ 17, 132 N.M. 101, 45 P.3d 41.

Turning to the show-up identifications themselves, *Patterson* enumerates several factors that may be considered in weighing the inherently suggestive nature of identifications against possible indicia of reliability in a particular case. *Patterson*, 2001-NMSC-013, ¶¶ 23-25; *see Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977); *Neil v. Biggers*, 409 U.S. 188, 198 (1972); *State v. Maes*, 100 N.M. 78, 82, 665 P.2d

6

1169, 1173 (Ct. App. 1983), *abrogated on other grounds by Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991).  As we stated above, each witness in this case had a good chance to view Defendant.  Riley briefly spoke with Defendant prior to the attack.  Hasse and Werner watched him walk around the courtyard for several minutes before Riley arrived and their attention was drawn by his odd behavior and the way in which he seemed out of place.  The area was well-lit, and both Hasse and Werner said they each had an opportunity to see Defendant clearly.  During the attack, Riley saw Defendant face to face at a distance of no more than six feet in a somewhat darker area.  Hasse, Werner, and Riley each agreed on Defendant's height and build in their initial descriptions.  They likewise agreed that he had a goatee and a ponytail.  Hasse and Werner had both described the hat found lying near Defendant when he was apprehended.  They also vaguely agreed that his age was in the range of late 20s to early 30s.  Defendant does not assert any great deviation between these descriptions and himself.  Defendant was apprehended within several minutes of the incident.  As each witness saw Defendant, each identified him, particularly Werner, who became more certain when he saw Defendant's ponytail.  All of these factors weigh in favor of a proper identification under *Patterson*.

Furthermore, the facts of this case are distinguishable from those in *Patterson*. In *Patterson*, the identification of the defendant was fraught with problems, but here

7

the factors weigh heavily in favor of a reliable identification. Taking this evaluation into account, together with the other evidence against Defendant mentioned above, it is entirely conceivable that a reasonable attorney could choose to forego a motion to suppress the identifications. The standard we employ is "whether a reasonably competent attorney *could have decided* that a motion to suppress was unwarranted even though the facts might have supported it." *Patterson*, 2001-NMSC-013, ¶ 27 (emphasis added). In this case, a fair weight of other evidence circumstantially and otherwise placed Defendant at the scene of the assault on Riley. Thus, we cannot say that a motion to suppress the identifications was warranted. Defendant has failed to establish that his attorney's performance fell below an objective standard of reasonableness, and without that, we cannot determine there was ineffective assistance of counsel.

**Defendant's Motions for Directed Verdict Were Properly Denied**

As our Supreme Court held in *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198,

> Our review of the denial of a directed verdict motion asks whether sufficient evidence was adduced to support the underlying charge. The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction. When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence.

8

> Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict, while at the same time asking whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]

(alteration omitted) (internal quotation marks and citations omitted).  In this case, Riley testified that Defendant broke a bottle over his head and then used the broken bottle to demand money from him.  Several witnesses directly identified Defendant as the perpetrator.  Likewise, a variety of evidence, as discussed above, also implicated Defendant as Riley's assailant.  Applying the standard announced in *Sena*, we cannot conclude that the district court improperly denied Defendant's motions. We affirm in all respects.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**