This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39464**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ERIC REGER,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Christopher Perez, District Court Judge**

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

TMP Legal, LLC
Timothy M. Padilla
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** After a bench trial, Defendant Eric Reger was found guilty of driving while intoxicated (DWI), contrary to NMSA 1978, Section 66-8-102(C)(l) (2016);[1] possession of an open container, contrary to NMSA 1978, Section 66-8-138(B) (2013); and failure

---

[1] Section 66-8-102(C)(1) is commonly referred to as "per se" DWI, and Section 66-8-102(A) is commonly referred to as "impaired to the slightest degree" DWI. *See State v. Pickett*, 2009-NMCA-077, ¶¶ 1, 6, 146 N.M. 655, 213 P.3d 805; *State v. Neal*, 2008-NMCA-008, ¶ 21, 143 N.M. 341, 176 P.3d 330. In this opinion, we will refer to these sections in like manner.

to yield right of way to oncoming vehicle, contrary to NMSA 1978, Section 66-7-332.1 (2017). Defendant challenges the sufficiency of the evidence supporting his conviction for per se DWI, contending that the State failed to relate his blood alcohol content (BAC) to the time of driving, ten hours earlier. We agree with Defendant and, therefore, we reverse and vacate his DWI conviction.

## BACKGROUND

**{2}** Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

## DISCUSSION

**{3}** As stated above, Defendant's sole argument on appeal is that there was insufficient evidence to support his conviction for per se DWI. Specifically, Defendant argues that because the State did not provide any scientific retrograde extrapolation evidence[2] to establish that his BAC was .08 or greater at the time he was driving or within three hours thereof, the district court could not find him guilty of per se DWI.[3]

**{4}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). In reviewing the sufficiency of the evidence, we begin by viewing "the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). We then consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

---

[2]Retrograde extrapolation is the process used in per se DWI cases when the delay between driving and testing is significant, and the state must show a connection between a defendant's BAC and the likely BAC at the time of driving. *See State v. Hughey*, 2005-NMCA-114, ¶ 9, 138 N.M. 308, 119 P.3d 188("[T]he admissibility of the BAC result is intertwined with the expert testimony on retrograde extrapolation because, under the *Baldwin* line of cases, the BAC taken four hours after the accident is relevant only if it tells the fact finder something about [the d]efendant's BAC at the time of the accident."); *see also id.* ¶ 15 (explaining that a jury cannot determine how a BAC result relates back to a particular BAC at the time of driving "[w]ithout evidentiary guidance" (internal quotation marks omitted)). Thus, if an expert can testify as to a method that reliably extrapolates from a defendant's BAC test result to a likely BAC at the time of driving, the BAC result is helpful to the fact-finder and may be admissible.

[3]We note that Defendant does not argue that the admission of his BAC was an abuse of discretion and we do not pursue arguments that the parties do not make. *See State v. Paiz*, 2011-NMSC-008, ¶ 33, 149 N.M. 412, 249 P.3d 1235("On appeal we only consider issues raised in the trial court unless the issues involve matters of jurisdictional or fundamental error.") Accordingly, we will limit our discussion to whether sufficient evidence supported Defendant's conviction of per se DWI.

reasonable doubt." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted).

**{5}**     The question for us on appeal is whether the district court's "decision is supported by substantial evidence, not whether the court could have reached a different conclusion." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880.

**{6}**     Here, Defendant was convicted of "per se" DWI contrary to Section 66-8-102(C)(l). This section provides: "It is unlawful for . . . a person to drive a vehicle in this state if the person has an alcohol concentration of eight one[-]hundredths [(.08)] or more in the person's blood or breath within three hours of driving the vehicle *and the alcohol concentration results from alcohol consumed before or while driving the vehicle*." (Emphases added.) To prove Defendant's guilt pursuant to this subsection of the statute, the State was required to prove beyond a reasonable doubt that (1) Defendant operated a motor vehicle, and (2) within three hours of driving, Defendant "had an alcohol concentration of eight one-hundredths (.08) grams or more in two hundred ten liters of breath and the alcohol concentration resulted from alcohol consumed before or while driving the vehicle." *See* UJI 14-4503 NMRA.

**{7}**     In cases where a defendant was given a chemical test more than three hours after the defendant drove, NMSA 1978, Section 66-8-110(E) (2007) provides that "the test result may be introduced as evidence of the alcohol concentration in the person's blood or breath *at the time of the test* and the trier of fact shall determine what weight to give the test result." (Emphasis added.)

**{8}**     At trial, the State failed to establish (1) Defendant's BAC at the time he was driving, or within three hours, and (2) that such BAC was the result of alcohol consumed before or while Defendant was driving. We explain.

**{9}**     At approximately 7:30 p.m. on the night of this incident, State Police Officer Alex Power responded to a two-vehicle accident on U.S. Highway 550. Upon arriving at the scene of the accident, Officer Power saw Defendant sitting on the ground next to his vehicle with a partially consumed bottle of vodka next to him. When Officer Power approached Defendant, he observed that Defendant had a large bump on his head and smelled of alcohol. As Officer Power spoke with Defendant, he noticed that Defendant's eyes were bloodshot and watery and that his speech was slurred.

**{10}**     When asked, Defendant told the officer that he was driving on the wrong side of the road and that he had been drinking alcohol while driving, as well as before and after the accident. Officer Power arrested Defendant for DWI and called an ambulance to take Defendant to a hospital. Because of Defendant's head injury, Officer Power, although trained to give field sobriety tests, decided not to give field sobriety tests to

Defendant. Approximately ten hours later, at 5:00 a.m., after informing Defendant of the Implied Consent Act and obtaining Defendant's consent to be tested, Officer Power gave Defendant a breath test using an IR-8000 breathalyzer machine. During the test, Defendant provided two breath samples, both which revealed a BAC of .08.

**{11}**    The State did not provide any scientific retrograde extrapolation evidence at the trial. Although the State conceded that Defendant "probably did drink after the accident," it argued that the district court could make inferences about what Defendant's BAC would be at the time of the accident without the need for such evidence.[4]

**{12}**    At the conclusion of the bench trial, the district court found Defendant guilty of DWI. But based on the district court's explanation, it appears that the court was confused as to which subsection of the DWI statute Defendant was charged. The district court mistakenly believed that Defendant was charged with the "impaired to the slightest degree" subsection of the statute instead of the "per se" subsection. Specifically, in announcing its verdict, the district court remarked that it was "concerned" by the time frame of the breathalyzer test but stated that it was not attributing much weight to this test and found that the evidence showed Defendant was impaired while driving. The district court added that it could make an inference either way but that the evidence weighed in favor of showing Defendant was "impaired at least to the slightest degree." Counsel for Defendant tried to clarify the subsection of the DWI statute with which Defendant was charged and brought this to the district court's attention, and the district court amended its verdict and found Defendant guilty of per se DWI. As to this confusion, the following exchange occurred between the district court and defense counsel:

> The Court: The test result, you know . . . I'm more than a little concerned by the timeframe of the test result, so I'm not putting a whole lot of weight into the .08, but, you know, *I can probably reasonably infer that if it was that high ten hours later, that it was probably significantly higher at the time of the accident*, but I don't have any way of knowing what the intervening cause would have been on that breath result in terms of what medical treatment was given to him. But obviously the defense didn't provide any testimony from either . . . [D]efendant, himself, as to what medical treatment he was given at the hospital. (Emphases added.)
>
> As it relates to whether or not he drank on the side of the road, . . . [D]efendant obviously hasn't stated that he drank a whole lot of alcohol while he was waiting for the officers to arrive.
>
> So I can make some inferences both ways, Mr. Padilla. But I think, quite frankly, just to be simple, the admissions, the nature of the accident,

---

[4]During his closing argument, the State argued to the district court that under the facts of this case, no such evidence was needed. It stated, " [W]e didn't bring any medical experts in; there really wasn't a place for them; but I think Your Honor can use . . . your own experience and commonsense to kind of figure out that probably a bottle of vodka is not what the doctor prescribed at the hospital."

*the test results*, the observations made by the officer with regards to [D]efendant's appearance in terms of bloodshot, watery eyes, odor of alcohol, slurred speech, I think it all clearly weighs in favor that . . .[D]efendant was impaired at least *to the slightest degree* when he was driving that car, rendering him incapable to safety to drive a vehicle within the state. (Emphasis added.)

So it will be the judgment of this [c]ourt that . . . [D]efendant . . . .

**{13}** At this point, defense counsel interrupted the district court to clarify the subsection of the DWI statute with which Defendant was charged.

Defense Counsel: May I . . . one important thing. [U]nderstand, first, that [Defendant] is charged with driving—they didn't charge him for affected; he was charged under [Section 66-8-102](C)(1), which is driving under the influence of .08 or above. I would submit to the [c]ourt he is not charged for driving that—where his finding occurred to the slightest degree; they didn't charge him with that, and so they haven't met their burden in that situation.

The Court: I'm showing the charge is [Section 66-8-]102(B). Let me see.

Defense Counsel: Well, it—

The Court: At the lower court he was adjud[icated]—at the lower court it was [Section 66-8-102](C)(1)?

Defense Counsel: Yes.

The Court: Okay. All right. Okay. So let's just make sure the record's clear that he was charged with [Section 66-8-102](C)(1); [o]n Odyssey, on my computer, it's reflecting . . . [Subsection] (B).

So it will be the judgment of this [c]ourt that [Defendant]. . . will be found guilty of driving under the influence under [Section] 66-8-102(C)(1), instead of [Section] 66-8-102(B).

There was a brief pause in the proceedings, and the district court continued with its decision.

The Court: And it would be unlawful for a person to drive a vehicle in this state as a person that has an alcohol concentration of eight one[-]hundredths or more in the person's blood alcohol within three hours, and the alcohol concentration results from an alcohol consumed before or while driving the vehicle.

Okay. And I do believe the case law, Mr. Padilla, reflects that the breath card, like you said—like I stated in the motion, it's for the trier of fact. [I] think the case law clearly holds that it's not a hard line three hours.

So it will be the judgment and the sentence of this [c]ourt that the defendant is guilty of driving under the influence.

**{14}** We turn now to the arguments of the parties. Defendant does not dispute that he was driving. He readily admitted to Officer Power that he had been driving on the wrong side of the road before the accident. Rather, Defendant argues that (1) because there was no scientific retrograde extrapolation evidence submitted to the district court to assist the court in determining Defendant's BAC at the time that he was driving or within three hours thereafter, the district court could not find that his BAC was at or above .08 at the time he was driving, and (2) even if such evidence had been submitted to the district court, it could not support a reasonable inference of Defendant's BAC at the time he was driving or within three hours thereafter, especially where there was evidence that Defendant may have drunk vodka between the time of the accident and the time Officer Power contacted him, when he was no longer driving.

**{15}** The State, relying on *State v. Day*, 2008-NMSC-007, ¶¶ 28-30, 143 N.M. 359, 176 P.3d 1091, counters that because Defendant's BAC was at .08, the State was not required to provide scientific retrograde extrapolation evidence. The State argues that in *Day* our Supreme Court limited retrograde extrapolation evidence to only two situations:

> In the first situation, the [*s*]*tate* can use scientific retrograde extrapolation evidence to prove that a BAC test taken *after three hours* and *below* [].08 shows that the defendant had an actual BAC of [].08 or higher within three hours of driving. Similarly, a *defendant* can use retrograde extrapolation evidence to show that a BAC test taken *after three hours* and *above* [].08 shows that the defendant had an actual BAC of less than [].08 within three hours of driving.

*Id.* ¶ 29 (emphases added). The State's reliance on *Day* is misplaced.

**{16}** First, *Day* did not limit the situations for which retrograde extrapolation evidence could be used. Instead, it said, "[W]e foresee *at least* two situations in which scientific retrograde extrapolation evidence would be necessary *for the* [*s*]*tate to meet its burden*." *Id.* ¶ 28 (emphasis added). Thus, those situations discussed in *Day* are not the only situations for which retrograde extrapolation evidence would be required and, in any event, "necessary for the [s]tate to meet its burden." *Id.*

**{17}** Second, the situation here is dissimilar from the situations listed in *Day.* In this case, the BAC test taken after three hours of driving (ten hours here) revealed that Defendant's BAC was neither above nor below .08. Instead, the test revealed that Defendant's BAC was exactly .08. Consequently, the situation here illustrates yet another instance that the *Day* Court did not discuss but for which the use of retrograde

extrapolation evidence is likely the only method by which Defendant's BAC at the time of driving can be established.

**{18}** No matter the result of the BAC test and the amount of time that has elapsed since driving, the *Day* Court has made clear that "while [a d]efendant's BAC tests were taken within one hour and six minutes of driving and would easily fall within that three-hour time limit, the amendment to our per se DWI statute will not eliminate the need to show a nexus or to relate a BAC test result to the time of driving in all situations." *Id.*

**{19}** Because the breath test here was taken ten hours after Defendant was no longer driving, Defendant contends that *Day* requires that the State present retrograde extrapolation evidence to prove that his BAC was at or above .08 at the time he was driving or within three hours thereafter. Defendant is correct. *Day* provides that "the party seeking to prove a BAC at an earlier time must use scientific retrograde extrapolation evidence." *Id.* ¶ 31. In this case, the State chose to pursue the charge of per se DWI and did not charge Defendant with being impaired to the slightest degree. Our Supreme Court has noted that "[t]he crime of DWI can be committed in different ways under Section 66-8-102, and that each way has different, discrete elements." *Pickett*, 2009-NMCA-077, ¶ 25 (Vigil, J., dissenting). Per se DWI requires that the State prove a defendant had a BAC of .08 within three hours of driving as a result of the defendant having consumed alcohol before or while driving. *See* § 66-8-102(C)(1). Even in such cases, we interpret *Day* to require that it is still necessary for the State to prove a nexus between a BAC of .08 or more and the time defendant operated a motor vehicle. *See Day*, 2008-NMSC-007, ¶ 28.

**{20}** In *Day*, our Supreme Court placed the burden of coming forward with retrograde extrapolation evidence on the State. It stated, "[T]he burden of finding such evidence is appropriate for the [s]tate to bear when attempting to convict a person suspected of any crime, and should the [s]tate choose to pursue a per se DWI conviction, it must take the type of investigatory work required to prove a defendant's guilt beyond a reasonable doubt." *Id.* ¶ 31.

**{21}** Regarding retrograde extrapolation evidence, we find particularly enlightening what we previously observed in *State v. Baldwin*, 2001-NMCA-063, ¶ 17, 130 N.M. 705, 30 P.3d 394. There this Court stated,

> [A] BAC reading from a laboratory test is just a sterile number; by itself it tells us nothing about a driver's condition hours earlier. Extrapolating backward in time can be a difficult task even for experts. *See People v. Victory*, 166 Misc. 2d 549, 631 N.Y.S.2d 805, 811 (Crim. Ct. 1995) ("'The longer the delay between the time of the incident and the sample collection, the more difficult it becomes, scientifically, to draw reasonable inferences from one 'data point,' back to the 'driving' time.'" (quoting Edward Fitzgerald & David Hume, *Intoxication Test Evidence: Criminal and Civil* § 2:30 (Lawyers Co-op 1987 & 1994 Supp.))). For a lay jury,

unassisted by corroborating evidence, the assignment becomes mere camouflage for guesswork.

**{22}** We further stated that "[w]ithout evidentiary guidance, no jury of lay persons [or judge sitting as factfinder] can know, beyond a reasonable doubt, whether a [].08 BAC test result would equate to a BAC reading at the time of driving of [].08, [].12., [].04, or anything in between." *Id.* ¶ 15. "Basing a criminal verdict upon such conjecture ignores the standard of proof—beyond a reasonable doubt—and undermines the most basic principles of fairness." *Id.* ¶ 18.

**{23}** Because we heavily rely on what *Day* instructs regarding the use and need of retrograde extrapolation, we take a moment to discuss the details of the case. In *Day*, the defendant was given a breathalyzer test one hour and six minutes after he was arrested. 2008-NMSC-007, ¶ 5. At trial, the defendant moved for a directed verdict arguing that because his BAC was measured an hour and six minutes after he was arrested, the state was required to produce retrograde extrapolation or other evidence to prove the defendant's BAC at the time of driving. *Id.* ¶ 6. On appeal, our Supreme Court held that "[b]ecause the [s]tate did not present its own scientific retrograde extrapolation evidence, the [s]tate failed to meet its burden of proof at the close of its case" but still concluded that the defendant's conviction for per se DWI was supported by substantial evidence because he presented his own evidence of retrograde extrapolation. *Id.* ¶ 26.

**{24}** Significantly for our purposes here, *Day* discussed in detail scientific retrograde extrapolation evidence vis-a-vis BAC. See *id.* ¶ 31. As to this topic, our Supreme Court stated,

> A BAC test is a quantitative measurement of a physical property. To extrapolate from the BAC at the time of testing to the BAC at an earlier time, one must know the rate at which the BAC changes over time. This rate is not constant, but varies over time, describing a curve rather than a straight line. Determining the shape of the curve is a science. The exact shape of the curve depends on a number of factors, including inter alia the type of alcohol consumed, the time period over which the alcohol was consumed, the time of the last drink, and when and what the defendant last ate. These factors can be quantified, although sometimes the supporting evidence may not be readily available.

*Id.* (text only).

**{25}** Because the State chose not to submit any retrograde extrapolation evidence here, it necessarily follows that the district court had no evidence about these factors or variables before it when it found Defendant guilty of per se DWI.

**{26}** Turning once again to the facts of this case, we note that Defendant admitted to Officer Power that he had consumed alcoholic beverages while driving and that he

drank other containers of alcoholic beverages while driving that the officer said he could not locate at the scene of the accident or in the vehicle. We note further that the evidence was unclear as to whether Defendant continued to drink from a bottle of vodka while sitting near his wrecked vehicle, which Officer Power observed in Defendant's possession when Officer Power initially contacted Defendant at the scene of the accident.[5]

**{27}** Critically, the State did not present an expert witness who could offer an opinion of Defendant's BAC based on scientific retrograde extrapolation at the time he was driving or within three hours thereafter considering the variables discussed in *Day*. As noted above, the State, to its peril, chose not to present such evidence and argued to the district court that it did not need such evidence to find Defendant guilty of per se DWI.

**{28}** Because of the absence of scientific retrograde extrapolation evidence in this case, we hold that the district court was unable to reasonably infer what Defendant's BAC was at the time of driving based on a breath test that was given to him ten hours later. This is doubly true, where, as here, the evidence was ambiguous as to whether Defendant drank an alcoholic beverage between the time he stopped driving and when he was contacted by the arresting officer.

**{29}** Thus, under the facts of this case, we hold the State did not meet its burden under Section 66-8-102(C)(1) to prove that Defendant's BAC was at or above a .08 within three hours of driving. Therefore, we must reverse Defendant's conviction for DWI because substantial evidence did not exist to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. *See Montoya*, 2015-NMSC-010, ¶ 52. Accordingly, we reverse and vacate Defendant's conviction for per se DWI as a lack of sufficient evidence bars retrial. *See State v. Willyard*, 2019-NMCA-058, ¶ 14, 450 P.3d 445 (stating that "insufficiency bars retrial").

**CONCLUSION**

**{30}** For the reasons stated above, we reverse and vacate Defendant's conviction for DWI, contrary to Section 66-8-102(C)(1).

**{31}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

---

[5]Of import, as to this point, is the fact that during its closing argument, the State conceded that Defendant "probably did drink after the accident, but a person who wasn't already intoxicated wouldn't . . . do that."

**KRISTINA BOGARDUS, Judge**